**Reversed and Rendered and Opinion filed March 26, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00621-CV

---

**THE WILLIARD LAW FIRM, L.P., Appellant**

**V.**

**JOHN SEWELL, Appellee**

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Cause No. 1012376**

---

### O P I N I O N

The Williard Law Firm, L.P. (Williard) appeals from the trial court's grant of a judgment notwithstanding the verdict (JNOV) favoring John Sewell. Sewell, a former client of Williard, sued for breach of fiduciary duty among other causes of action. In response, Williard alleged among other defenses that Sewell's claims were barred by the applicable statute of limitations. Sewell, in turn, pleaded the discovery rule. The jury found that Williard breached fiduciary duties it owed to Sewell but also found a date by which Sewell should have discovered the breach.

Application of the date found by the jury would mean that Sewell did not timely file his lawsuit. Upon Sewell's motion for JNOV, the trial court disregarded the jury's discovery date finding and rendered judgment for Sewell based on breach of fiduciary duty. We reverse and render a take-nothing judgment favoring Williard.

### *Background*

In February 2007, Sewell and Williard entered into an attorney-client agreement for Williard to represent Sewell in a matter against Panola Building Co., L.L.C., involving the alleged wrongful foreclosure of Sewell's property on Surratt Drive in Houston (the Surratt Property). This agreement contained the following two paragraphs addressing the contingency fee to be paid to Williard in the event of a recovery in the lawsuit:

> 2. In consideration of the services rendered and to be rendered to Client by Attorney, Client does hereby assign, grant and convey to Attorney the following present undivided interests in all his claims and causes of action against Panola for and as a reasonable contingent fee for Attorney's fees, and said contingent Attorney's fee will be one-half (1/2) of any net property settlement or recovery made (after deducting all third-party fees paid by attorney).
>
> 3. In the event Attorney is successful in having the title of the subject property transferred into Client's name, Client agrees to hold title along with Attorney as tenants in common with tenant rights of survivorship as payment of the fee set forth in Section no. 2.

Sewell signed the agreement, and Stephen M. Williard (Attorney) signed on behalf of Williard.

The lawsuit against Panola was settled on July 26, 2007, with Panola agreeing to deed the Surratt Property back to Sewell, free and clear of any liens, and give Sewell $19,500 in cash.[1] On September 6, 2007, Sewell received a check

---

[1] Sewell testified that as part of the settlement agreement, he no longer owed $30,000 to Panola as Panola had claimed in the lawsuit.

for $8,740.15, which represented the proceeds from the cash payment from Panola minus litigation expenses and Williard's 50 percent. Additionally, all dated the same day, a warranty deed transferred a 50 percent interest in the Surratt Property from Sewell to Williard, a second warranty deed then conveyed the same interest back to Sewell, and a deed of trust created a vendor's lien favoring Williard to secure a $28,951.60 promissory note (at 10 percent interest) from Sewell to Williard.[2] On October 11, 2007, Sewell made his first payment of $300 on the promissory note.[3] This date and amount are indicated on a handwritten receipt in the record and were testified to by Tiffany Baird, a Williard employee. Sewell thereafter continued to make payments to Williard until March 2011, although sometimes Sewell did not make the payments timely. Williard sent a foreclosure notice to Sewell in November 2010 and foreclosed in December 2010.

Sewell apparently first consulted with new counsel upon learning in March 2011 that Williard had foreclosed on the property.[4] On April 2, 2012, he filed the present lawsuit against Williard, alleging breach of fiduciary duty, breach of contract, unconscionability, wrongful foreclosure, and fraud involving real estate, and seeking a declaratory judgment. In response, Williard pleaded the four-year statute of limitations, among other defenses. Sewell then asserted the discovery

---

[2] Sewell testified that he did not remember signing the deeds or the promissory note, but he did recall signing a blank sheet of paper and the Attorney explaining that he would fill in the details later. The Attorney testified that he explained all of the documents to Sewell and Sewell signed them. The Attorney also stated that the reason the 50 percent interest in the property was deeded back to Sewell in exchange for the promissory note was because Sewell wanted the property in his name only.

[3] Sewell testified that he set the $300 payment amount himself and he thought he would be making the payments for "about five years." Although that would amount to a significant sum, it would not cover the entirety of the $28,951.60 promissory note plus interest.

[4] In his briefing, Sewell repeatedly urges April 1, 2011 as the day on which he first consulted with his current counsel and learned of Williard's wrongful conduct. Sewell does not, however, provide any record citation supporting this date.

3

rule. The discovery rule exception to the statutes of limitations defers accrual of a cause of action until the plaintiff knew, or in the exercise of reasonable diligence should have known, the facts giving rise to a cause of action. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).

At trial, Sewell testified that he did not think that Williard was to receive 50 percent of the property in the event of success in the underlying lawsuit against Panola. Instead, he thought that Williard was only entitled to half of the cash proceeds from the settlement with Panola. Sewell further testified that he only received a third grade education and that he had vision problems that kept him from being able to read the documents Williard prepared. He said that the Attorney told him that he was getting a good deal and did not explain any of the details. Sewell stated he believed that the amount reflected in the promissory note was to compensate Williard for additional, post-settlement, legal work required to return everything regarding the property back "like it was" before Panola foreclosed, i.e., a deed in Sewell's name, property tax issues remedied, etc.

At the conclusion of trial, the jury found that the attorney-client relationship between Sewell and Williard began on February 6, 2007 and ended on October 25, 2007; Williard did not comply with its fiduciary duty to Sewell; Sewell was injured before April 2, 2008 (four years before he filed suit); and Sewell was damaged in the past in the amount of $28,951.60. The jury further found that in the exercise of reasonable diligence, Sewell should have discovered the breach of fiduciary duty by October 11, 2007 (more than four years before he filed his lawsuit), and that Sewell and Williard were each responsible for 50 percent of Sewell's damages.[5] In

---

[5] Question no. 4 in the jury charge read in pertinent part as follows:

By what date should Sewell, in the exercise of reasonable diligence have discovered that [Williard] did not comply with its fiduciary duty to Sewell?

Answer with a date in the blank below.

4

the remainder of the charge, the jury declined to find that Williard had breached either the attorney-client agreement or the promissory note, committed fraud in a real estate transaction, or wrongfully foreclosed on Sewell's property.

Williard moved for judgment based on application of the statute of limitations and the jury's finding that Sewell should have discovered the breach of fiduciary duty by October 11, 2007. Sewell moved for JNOV, asking the court to disregard the jury's discovery date. The trial court granted Sewell's motion and awarded him judgment for $14,475.80, pre- and post-judgment interest, and costs of court. The trial court did not offer a specific date on which Sewell discovered or should have discovered the breach or provide further explanation of its holding.

### *Legal Underpinnings*

As stated above, in its sole issue, Williard contends that the trial court erred in disregarding the jury's discovery rule finding and granting Sewell a JNOV. A trial court may disregard a jury finding and render a JNOV if there is no evidence to support the jury's finding or if a directed verdict would have been proper. *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex. 1998). We review such a ruling under a legal-sufficiency standard, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Tanner*, 289 S.W.3d at 830. It is the court's charge, not some other unidentified law, that

Answer: 10-11-07

5

measures the sufficiency of the evidence when, as here, there was no objection to the relevant portion of the charge. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002).

To be considered timely, claims for breach of fiduciary duty must be filed within four years of the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.004(a)(5); *Trousdale v. Henry*, 261 S.W.3d 221, 233 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Generally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). The discovery rule is a narrow exception to limitations and should be construed strictly. *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 227 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Computer Assocs.*, 918 S.W.2d at 455 and *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996)). As mentioned above, when applicable, the discovery rule defers accrual of a cause of action until the plaintiff knew, or in the exercise of reasonable diligence should have known, the facts giving rise to the cause of action. *Computer Assocs.*, 918 S.W.2d at 455.

Neither party disputes that the discovery rule properly applies to this case; however, they disagree as to the date by which Sewell should have known about the facts giving rise to his cause of action. A plaintiff who successfully invokes the discovery rule still must have sought information about his injuries and their likely cause once apprised of facts that would prompt a reasonably diligent person to make an inquiry that would lead to discovery of the cause of action. *Seureau*, 274 S.W.3d at 228. The specific date by which a plaintiff knew or should have known of an injury is generally a question of fact for the jury, *see Childs v. Haussecker*, 974 S.W.2d 31, 47 (Tex. 1998). Unless evidence conclusively

establishes when a party should have known of facts giving rise to a claim, the question is one for the jury. *See Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006); *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 566 (Tex. App.—Dallas 2014, pet. filed). The party seeking to benefit from the discovery rule has the burden of obtaining findings to support its application. *Barker*, 213 S.W.3d at 312; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

Because fiduciaries are presumed to possess superior knowledge to that of the client, "it may be said [in the fiduciary context] that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs." *Computer Assocs.*, 918 S.W.2d at 456 (citing *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197, 205 (Tex. 1957)). "While a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V.*, 933 S.W.2d at 8. "Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). That said, even in a breach of fiduciary duty case, the claim accrues when the claimant knows, or in the exercise of ordinary diligence should know, of the wrongful act and resulting injury. *See Murphy v. Campbell*, 964 S.W.2d 265, 271 (Tex. 1997); *Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 642 (Tex. App.—Dallas 2013, no pet.).

### *Discussion*

Here, the jury found that, in the exercise of reasonable diligence, Sewell should have discovered the breach of fiduciary duty by October 11, 2007, the date

on which he made his first payment on the promissory note. Sewell filed suit on April 2, 2012, which was more than four years past the date on which the jury found he should have discovered the breach of fiduciary duty. In his motion for JNOV, which the trial court granted, Sewell asserted that the evidence was legally insufficient to support the jury's discovery rule finding, and instead, the evidence conclusively established April 1, 2011—the day that he first conferred with his current counsel—as the date on which he should have discovered Williard's breach of fiduciary duty.

Williard contends that the record contains legally sufficient evidence to support the jury's finding that Sewell should have discovered that Williard did not comply with its fiduciary duty by October 11, 2007, and the trial court therefore erred in granting the JNOV. *See Tanner*, 289 S.W.3d at 830. We agree. As described above, the evidence demonstrated that Sewell made his first payment of $300 on that date to Williard on the promissory note. There is no way to tell whether the jury believed Williard or Sewell regarding the circumstances surrounding execution of the promissory note, *i.e.*, whether the Attorney accurately described the note and the related deeds to Sewell, whether Sewell actually signed the documents, or just what Sewell thought was the purpose of his $300 payments. Regardless, it was reasonable for the jury to conclude that, in the exercise of reasonable diligence, Sewell should have made inquiries at least by the time he was to begin paying additional money to Williard beyond the fee he knew Williard had already received and that diligent inquiries would had led Sewell to discover the nature of his injury. *See Childs*, 974 S.W.2d at 40.[6] The evidence establishing

---

[6] As set forth above, the relevant charge question asked "[b]y what date should Sewell, in the exercise of reasonable diligence have discovered that Williard did not comply with its fiduciary duty?" *See supra* n.2; *Wolff*, 94 S.W.3d at 530 (explaining that sufficiency of the evidence is assessed under the charge as given).

this date includes Williard employee Baird's testimony and a handwritten receipt.

Sewell insists that he did not have either the educational background or the physical ability to discover Williard's wrongful conduct until he consulted with his current counsel on April 1, 2011. As mentioned, Sewell testified that he did not have any formal education past the third grade and his vision had become so bad that he could not read the documents that Williard prepared. Sewell additionally argues that because Williard presented no evidence contradicting his clear, direct, positive testimony on these matters, which was free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, the jury was compelled to take the testimony as true, citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). However, even if the jury was required to accept as true Sewell's testimony regarding his education and physical abilities—a question we need not and do not decide in this case—it still could have reasonably deduced that he should have discovered the nature of his injuries by the time he began making payments on the promissory note. The payment of money was, in short, a significant event that the jury could have reasonably believed should have caused Sewell to ask questions. *See Trousdale*, 261 S.W.3d at 234 ("Discovery occurs when a plaintiff has knowledge of such facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action.").

Sewell further asserts that he possessed no background or information which would have allowed him to determine that his attorney was breaching a fiduciary duty.[7] The focus of the discovery rule, however, is not on discovery of a particular

---

[7] Sewell specifically points out that he had no knowledge of the Texas Disciplinary Rules of Professional Conduct or their application to these facts, but these rules do not provide a basis for a breach of fiduciary duty cause of action. *See Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 931 (Tex. App.—Houston [14th Dist.] 2013, pet denied).

cause of action, it is on discovery of facts, including injury, giving rise to a cause of action. *See Murphy*, 964 S.W.2d at 271; *Computer Assocs.*, 918 S.W.2d at 455; *see also Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 583 (Tex. App.—Dallas 1991, writ denied) (explaining in the discovery rule context that "accrual of the cause of action does not await the plaintiff's recognition that he has grounds for a lawsuit."). Sewell does not cite any cases supporting his suggestion that he needed to have understood what constitutes a breach of fiduciary duty before he should have been required to make inquiries about an injury.

Because the evidence was sufficient to support the jury's finding that Sewell should have discovered the facts giving rise to his breach of fiduciary duty claim by October 11, 2007, more than four years before he filed his lawsuit, the trial court erred in disregarding this jury finding and awarding a JNOV favoring Sewell.[8] Accordingly, we sustain Williard's sole issue.

We reverse the trial court's judgment and render a take-nothing judgment favoring Williard.

/s/ Martha Hill Jamison
   Justice

Panel consists of Justices Jamison, Busby, and Brown.

---

[8] Because we hold the evidence sufficient to support the jury's discovery rule finding, we need not analyze in depth Sewell's argument that he conclusively established April 1, 2011 as the date on which he should have discovered Williard's breach of fiduciary duty (which would be required for a JNOV). *See generally Barker*, 213 S.W.3d at 312 ("A party seeking to benefit from the discovery rule has the burden of obtaining findings to support its application."). The evidence supporting the jury's finding negates Sewell's contention.

10