**Reversed and Remanded and Memorandum Opinion filed June 21, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00071-CV

## PHILLIP R. SCHLITTLER, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF CHARLES A. TISDALE, Appellant

## V.

## THE ESTATE OF ADRIAN F. MEYER, Appellee

**On Appeal from the County Court at Law**
**Austin County, Texas**
**Trial Court Cause No. 14PR-9813**

## M E M O R A N D U M   O P I N I O N

Phillip R. Schlittler, individually and as independent executor of the estate of Charles A. Tisdale, sued the estate of Adrian F. Meyer, and alleged that Meyer misappropriated assets while serving as executor of Charles A. Tisdale's estate. The trial court granted summary judgment in favor of Meyer's estate, holding that Schlittler's claims were barred by the applicable four-year statute of limitations.

We conclude that the summary judgment evidence failed to establish as a

matter of law the date on which Schlittler's claims accrued. We reverse and remand for proceedings consistent with this opinion.

## BACKGROUND

### I. Facts

Schlittler is the grandson of Charles A. Tisdale, who died in 2005. Charles left the entirety of his estate to his daughter Connie Tisdale, who was Schlittler's mother.[1] Connie was named executor of Charles's estate but died before Charles's will was admitted to probate.

A probate court in Iberia Parish, Louisiana oversaw the probate of Charles's estate. Meyer, Connie's husband and Schlittler's step-father, was appointed executor of Charles's estate after Connie's death.

In January 2006, Meyer filed with the probate court a petition to appoint a notary to list the contents of Charles's safe deposit box located at a Regions Bank branch in New Iberia, Louisiana. The probate court granted the petition and a notary opened Charles's safe deposit box in Meyer's presence on January 31, 2006. The notary filed with the probate court a "Return of Notary" listing the safe deposit box's contents, including seven Certificates of Deposit ("CDs") in the name of "C.A. Tisdale or Connie L. Meyer." Schlittler alleges that Meyer subsequently misappropriated three of the CDs found in Charles's safe deposit box.

In December 2012, Schlittler mailed a letter to the probate court asserting that Meyer "abandoned [Charles's estate] for nearly 7 years." Schlittler claimed that Meyer failed to provide any annual accountings for Charles's estate and

---

[1] Because they shared the same last name, we will refer to Charles A. Tisdale and his daughter by their first names to avoid confusion.

asserted that Meyer's current location was unknown.

Schlittler mailed a second letter to the probate court in January 2013, again asserting that Meyer had abandoned Charles's estate. Schlittler's letter discussed his attempt to complete a partial accounting of Charles's estate:

> Even with the court order I was not able to conduct a partial accounting on my own. Regions Bank informed me there are banking privacy rules and regulations that prevented disclosure of [Charles's] account information. I would need to be the succession representative to be given account information.

In January 2013, the probate court removed Meyer as executor of Charles's estate and appointed Schlittler as executor.

Schlittler received an email from Regions Bank on January 28, 2013, showing that three of the seven CDs found in Charles's safe deposit box were "closed" on February 1, 2006, one day after Charles's safe deposit box was opened. On January 28, 2013, Schlittler sent a letter to Meyer's attorney demanding the proceeds from the CDs. He received no response.

Meyer died on March 10, 2014. His wife, Shirley Poppe Meyer, was appointed executor of his estate.[2]

## II.  Procedural History

Schlittler sued Meyer's estate on March 13, 2015, requesting declaratory relief and asserting a claim for breach of fiduciary duty. Schlittler's first amended petition asserts that the discovery rule tolls the statute of limitations applicable to his claims. Schlittler served process on Shirley in her capacity as independent executrix of Meyer's estate. Shirley answered as executrix of Meyer's estate and

---

[2] Because she shares the same last name as her late husband, we will refer to Shirley Poppe Meyer by her first name to avoid confusion.

3

counterclaimed for conversion.[3]

Shirley filed a traditional summary judgment motion entitled "Defendant's Second Motion for Partial Summary Judgment (Statute of Limitations)."[4] Shirley's summary judgment motion asserted that Schlittler's suit is barred by the applicable four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon 2002).

Schlittler argued in response that the statute of limitations was tolled by the discovery rule and asserted that Shirley failed to "prove as a matter of law that there is no genuine issue of fact about when [Schlittler] discovered or should have discovered the nature of the injury." Schlittler stated that he was unable to discover Meyer's misappropriation of the CDs until after he was appointed executor of Charles's estate in January 2013, thereby tolling the applicable four-year limitations period and making his March 2015 lawsuit timely for limitations purposes.

The trial court signed an order granting Shirley's traditional summary judgment motion on June 22, 2016. The order did not specify the grounds on which the trial court granted Shirley's summary judgment motion. Shirley filed a notice of nonsuit of her counterclaim, which was confirmed by the trial court in an order signed on July 11, 2016.

Schlittler filed a motion for reconsideration of the trial court's ruling on Shirley's summary judgment motion or, in the alternative, a motion for

---

[3] "A decedent's estate is not a legal entity and may not properly sue or be sued as such." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (internal quotation omitted). Although the parties did not address this issue in the trial court, Shirley's filings indicate that she is litigating as executrix of Meyer's estate. For the purposes of this memorandum opinion, we refer to Shirley as the appellee in this action.

[4] The trial court denied Shirley's first summary judgment motion.

4

clarification. Schlittler's motion for reconsideration was set for a hearing on December 2, 2016. The trial court signed an order denying Schlittler's motion for reconsideration on December 22, 2016. Schlittler filed a notice of appeal. This court entered an abatement order on June 9, 2017, to permit the trial court to clarify its intent regarding the finality of its judgment. The trial court signed a "Final Summary Judgment" on June 27, 2017, rendering a take-nothing judgment in favor of Shirley. We reinstated Schlittler's appeal on July 13, 2017.[5]

### STANDARD OF REVIEW

A summary judgment is reviewed *de novo*. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). When reviewing a summary judgment, we examine the record in the light most favorable to the nonmoving party, indulging every reasonable inference and resolving any doubts in the nonmoving party's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The party moving for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Exxon Mobil Corp.*, 520 S.W.3d at 579.

### ANALYSIS

Schlittler asserts that the trial court erred in granting Shirley's traditional summary judgment motion because (1) the discovery rule tolls the statute of

---

[5] In the June 9, 2017 order abating Schlittler's case, we determined that the trial court did not fully dispose of Schlittler's claims in its (1) June 22, 2016 order granting Shirley's summary judgment motion; (2) July 11, 2016 order confirming Shirley's notice of nonsuit; or (3) December 22, 2016 order denying Schlittler's motion for reconsideration. We concluded that "no final judgment ha[d] been signed in this case." We abated Schlittler's appeal to permit the trial court to clarify its intent and to permit the parties to obtain a final judgment. *See* Tex. R. App. P. 27.2.

The trial court signed a final judgment on June 27, 2017. In our July 13, 2017 order, we concluded that Schlittler's notice of appeal was prematurely filed and "deemed [it] to have been filed on June 27, 2017." *See* Tex. R. App. P. 27.1(a).

5

limitations applicable to his claims; and (2) Shirley failed to meet her burden to show no genuine issue of material fact regarding when Schlittler discovered or should have discovered the nature of the alleged injury. We sustain Schlittler's issue on appeal.

## I.  Discovery Rule

Schlittler asserts that Shirley failed to show conclusively that the discovery rule does not toll the statute of limitations applicable to Schlittler's breach of fiduciary duty claim and requests for declaratory relief.

To be considered timely, a breach of fiduciary duty claim must be filed within four years of the claim's accrual. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5); *Williard Law Firm, L.P. v. Sewell*, 464 S.W.3d 747, 751 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A declaratory judgment action is a "procedural device used to vindicate substantive rights" and "is generally governed by the statute of limitations for the legal remedy underlying the claim." *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied); *see also In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.). Because Schlittler's requests for declaratory relief arise from the same facts that underlie his fiduciary duty claim, they are governed by the same four-year limitations period. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5); *In re Estate of Denman*, 362 S.W.3d at 144; *City of Austin*, 274 S.W.3d at 836.

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting

6

damages have yet to occur." *Id.* Determining a claim's accrual presents a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001).

The discovery rule is a "very limited exception" to the general principles for determining a claim's accrual. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996); *see also Williard Law Firm, L.P.*, 464 S.W.3d at 751. "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Id.* Under the discovery rule, a claim's accrual may be deferred if "'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) (quoting *Comput. Assocs. Int'l, Inc.*, 918 S.W.2d at 456). "'An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Id.* at 313-14 (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734-35 (Tex. 2001)).

When the non-movant asserts the discovery rule, the party seeking summary judgment on limitations must (1) conclusively establish when the claim accrued, and (2) negate the discovery rule by establishing, as a matter of law, that there is no genuine issue of fact regarding when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of the alleged injury. *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Cluck v. Mecom*, 401 S.W.3d 110, 118 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

### A. The Discovery Rule Applies to Schlittler's Claims

The parties dispute whether the discovery rule applies to Schlittler's claims.

The discovery rule applies when the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. *Via Net*, 211 S.W.3d at 313.

Whether an injury is inherently undiscoverable is a legal question "decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Id*. at 314 (emphasis in original).

"Because fiduciaries are presumed to possess superior knowledge to that of the client, 'it may be said [in the fiduciary context] that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs.'" *Williard Law Firm, L.P.*, 464 S.W.3d at 752 (quoting *Comput. Assocs. Int'l, Inc.*, 918 S.W.2d at 456); *see also Moore v. Broussard*, No. 14-03-00114-CV, 2004 WL 2438924, at *2 (Tex. App.—Houston [14th Dist.] Nov. 2, 2004, no pet.) (mem. op.) (reversing trial court's summary judgment on the plaintiff's breach of fiduciary duty claim because defendant did not negate the discovery rule as a matter of law). The reason underlying this presumption "is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996).

Evidence of an injury is objectively verifiable if the facts upon which liability is asserted are demonstrated by direct evidence, expert testimony, or are otherwise indisputable. *See id*. at 7.

We conclude that the discovery rule applies to Schlittler's claims because the nature of the alleged injury is inherently undiscoverable and evidence of the injury is objectively verifiable.

As executor of Charles's estate, Meyer was held to "the same high fiduciary duties and standards . . . as are applicable to trustees." *Evans v. First Nat'l Bank of Bellville*, 946 S.W.2d 367, 379 (Tex. App.—Houston [14th Dist.] 1997, writ denied). Because Meyer operated as a fiduciary, we may presume that the injury flowing from Meyer's alleged misappropriation of Charles's CDs was inherently undiscoverable. *See S.V.*, 933 S.W.2d at 8; *Comput. Assocs. Int'l, Inc.*, 918 S.W.2d at 456.

The summary judgment evidence supports the application of this presumption. In his January 2013 letter to the probate court, Schlittler asserted that he was unable to conduct a partial accounting of Charles's safe deposit box because he was not the estate's representative. The record shows that Schlittler learned of the disposition of the CDs only after he was appointed executor of Charles's estate. Schlittler's inability to inquire regarding the CD's status until he was appointed executor of Charles's estate supports the conclusion that the nature of the alleged injury is inherently undiscoverable.

The alleged injury is objectively verifiable because it can be demonstrated by direct evidence. *See S.V.*, 933 S.W.2d at 7. The email Schlittler received from Regions Bank on January 28, 2013, indicates that the three CDs at issue were "closed" on February 1, 2006, one day after Charles's safe deposit box was opened.

Because the nature of the alleged injury is inherently undiscoverable and evidence of the injury is objectively verifiable, the discovery rule applies to Schlittler's claims.

Shirley asserts several arguments to support her contention that the discovery rule is inapplicable, which we address in turn.

9

First, Shirley asserts that public policy counsels against employing the discovery rule in the probate context because of the state's interest in the orderly administration of estates and the finality of judgments in probate proceedings. Shirley cites *Frost National Bank v. Fernandez*, 315 S.W.3d 494 (Tex. 2010), and *Little v. Smith*, 943 S.W.2d 414 (Tex. 1997), to support her argument.

*Little* and *Fernandez* are distinguishable. In both cases, the court's refusal to permit tolling under the discovery rule was motivated by concerns regarding belated inheritance claims asserted years after an estate was closed. *See Fernandez*, 315 S.W.3d at 511-12 (holding that the discovery rule does not apply to inheritance claims by non-marital children); *Little*, 943 S.W.2d at 419-20 (holding that the discovery rule does not apply to inheritance claims by adoptee children). That reasoning does not foreclose Schlittler's reliance on the discovery rule because he is not asserting an inheritance claim; instead, he seeks to recover for a fiduciary's alleged misappropriation of an estate's assets.

Second, Shirley asserts that Schlittler had "constructive knowledge" of the alleged wrongdoing because "[t]he Return of Notary showed that [Meyer] had, pursuant to the Court's Order, taken possession of the contents of [Charles's] safe deposit box, and said contents included the CDs the subject of this suit." This constructive knowledge, Shirley contends, "negates a finding that an injury is inherently undiscoverable."

This argument fails because, contrary to Shirley's contention, the Return of Notary did not show that Meyer took possession of the contents of Charles's safe deposit box. The Return states that Charles's will and self-proving affidavit were the only items removed from the safe deposit box. Although the Return of Notary lists the seven CDs as items "found in the box," the Return does not state or otherwise indicate that the CDs were removed from the box.

10

Finally, Shirley asserts that Schlittler failed to ***plead*** that the alleged injury was inherently undiscoverable and objectively verifiable.

A party claiming reliance on the discovery rule ordinarily must plead it. *Nickols v. Oasis Remarketing, LLC*, No. 14-17-00556-CV, 2018 WL 2436058, at *4 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet. h.) (mem. op.). Schlittler satisfied this requirement and pleaded the discovery rule in his first amended petition. Shirley does not cite any cases that require a party's pleading to additionally invoke the "inherently undiscoverable and objectively verifiable" standard using those precise words.[6]

We conclude that the nature of the alleged injury is inherently undiscoverable and evidence of the injury is objectively verifiable. Therefore, the discovery rule applies to Schlittler's claims.

### B. Shirley Failed to Satisfy Her Summary Judgment Burden

When the discovery rule applies, a claim's accrual is deferred until the plaintiff knew or should have known of the facts giving rise to the cause of action. *KPMG Peat Marwick*, 988 S.W.2d at 748. The burden is on the party seeking summary judgment to "prov[e], as a matter of law, there is no genuine issue of fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of [his] injury." *Cluck*, 401 S.W.3d at 117-18.

Shirley failed to satisfy this burden. Shirley asserts that Schlittler "admitted" that his causes of action accrued on February 1, 2006, and points to Schlittler's answers to her requests for admission to support this contention. Schlittler answered "Admit" to the following requests for admission:

5.   The document attached as Exhibit 3 is a genuine copy of that

---

[6] Schlittler's petition did state that the "act and omissions were undiscoverable."

11

document.

6. The document attached as Exhibit 3 was created on or before January 28, 2013.

7. The document attached as Exhibit 3 was signed on or before January 28, 2013.

8. The signature on page 1 of the document attached as Exhibit 3 was made by Phillip Schlittler.

"Exhibit 3" refers to Schlittler's January 28, 2013 letter to Meyer's attorney. In the letter, Schlittler states that on February 1, 2006, Meyer cashed three CDs removed from Charles's safe deposit box. Schlittler's letter demands that the proceeds be returned to Charles's estate.

Under the discovery rule, a claim accrues when the plaintiff "discovered, or in the exercise of reasonable diligence should have discovered, the nature of [his] injury." *Id*. We disagree with Shirley's contention that Schlittler's January 28, 2013 letter conclusively proves that Schlittler knew or should have known of the alleged injury on February 1, 2006. Rather, the letter indicates at most that the alleged injury occurred on February 1, 2006 — the letter does not suggest that Schlittler knew or should have known of the injury on this date. This evidence does not show that, as a matter of law, Schlittler knew or should have known of the alleged injury in February 2006.

Shirley does not advance any other arguments or point to other evidence to show when Schlittler knew or should have known of Meyer's alleged misappropriation of the CDs stored in Charles's safe deposit box. Shirley did not satisfy her summary judgment burden and failed to prove that there is no genuine issue of fact about when Schlittler discovered, or in the exercise of reasonable diligence should have discovered, the nature of the alleged injury.

12

**CONCLUSION**

We conclude that (1) the discovery rule applies to Schlittler's claims; and (2) Shirley failed to prove as a matter of law when Schlittler discovered or should have discovered the nature of the alleged injury.

We reverse the trial court's June 27, 2017 "Final Summary Judgment" and remand for proceedings consistent with this opinion.


/s/     William J. Boyce
Justice


Panel consists of Justices Boyce, Jamison, and Brown.