**Affirmed in Part, Reversed and Remanded in Part, and Majority Opinion and Concurring and Dissenting Opinion filed October 17, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00467-CV

---

## ROBERT KELTON ROSENBERGER, Appellant

### V.

## HARVEY LEMASTER D/B/A INSURANCE OFFICE OF MONTGOMERY, Appellee

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16-CV-0524-A**

---

### NO. 14-21-00511-CV

---

## ROBERT KELTON ROSENBERGER, Appellant

### V.

## WALDEN POND OWNERS ASSOCIATION, Appellee

## CONCURRING AND DISSENTING OPINION

I join section II of the majority opinion, but I am unable to join section I.  I concur in the judgment with respect to the issues discussed in section I(A), and I dissent from the judgment with respect to the issues discussed in section I(B).[1]

### Summary Judgment Issues

One of Rosenberger's claims against the Association is for a declaration that his OOTR agreement is valid and enforceable.  The Association filed a motion for summary judgment to defeat this claim on two grounds:  (1) res judicata, and (2) Rosenberger's OOTR agreement is void because there was no vote to approve it.  The trial court granted summary judgment in the Association's favor.  Rosenberger challenges both summary-judgment grounds in his first issue.  Agreeing that neither ground was proven, the majority reverses the judgment.  I concur with the majority but write separately because my reasoning differs.

### A.  Res Judicata

Res judicata prevents parties and their privies from relitigating a cause of action that has been finally adjudicated by a competent tribunal.[2]  The doctrine also bars claims or defenses that, through diligence, should have been litigated in the

---

[1] The majority opinion does not say so, but the court has on its own motion decided these two appeals together.  *See In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd) (deciding multiple appeals together).

[2] *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206-07 (Tex. 1999), *disagreed with on other grounds by In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292 & n.5 (Tex. 2016); *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 630 (Tex. 1992).

prior suit but were not.[3] The doctrine is intended to promote judicial economy by ensuring consistency and stability of court decisions, among other salutary goals.[4] While res judicata encompasses the separate concepts of claim preclusion and issue preclusion,[5] only claim preclusion is before us here. It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.[6]

It may seem at first impression that these elements, as traditionally stated, are met. The Association presented summary-judgment proof that a final judgment was rendered in the 2013 lawsuit by a court with jurisdiction. The Association and Rosenberger were parties to the 2013 lawsuit and are parties here.[7] And the prior judgment declared void OOTR agreements identical to the one Rosenberger inconsistently seeks to declare valid in this second action. It is undisputed that all OOTR agreements have the same terms and all the property owners who held or hold such agreements are members of the Association. Barring Rosenberger's declaratory judgment claim is thus quite consistent with res judicata's purpose because Rosenberger's desired judgment would permit him to hold an OOTR agreement that is valid, while the prior judgment declared void the OOTR

---

[3] *Ingersoll-Rand Co.*, 997 S.W.2d at 207.

[4] *See id.*; *Barr*, 837 S.W.2d at 629.

[5] *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

[6] *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

[7] When the parties in the second action were also parties in the first action, then the identity-of-parties element is met. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 n.7 (Tex. 2021); *Lancaster v. St. Yves*, No. 01-17-00250-CV, 2018 WL 6175311, at *6-7 (Tex. App.—Houston [1st Dist.] Nov. 27, 2018, pet. denied) (mem. op.) (when one of the parties in the second action was an intervenor in the first action, the identity-of-parties element is met).

agreements of all owners, including those identically situated to him and (like him) also parties to the 2013 lawsuit. The doctrine of res judicata exists in large measure to prevent results such as this.

Res judicata, however, will apply to and bar only a claim the party in the first action was required to assert in that action.[8] If a party has discretion not to assert a claim in litigation, then a decision to refrain from doing so does not operate as a bar in later litigation. The Fifth Circuit recently applied this reasoning to hold that an intervenor who was not required to assert a claim in a lawsuit was not barred by res judicata from asserting the claim in a second suit.[9]

Based on the record presented, the Association did not prove in its summary-judgment motion that Rosenberger's declaratory judgment claim against the Association was compulsory in the 2013 lawsuit. The Association (as defendant) and Rosenberger (as intervenor) were parties to that action, but their interests were aligned initially. Generally, co-parties with aligned interests are not required to assert cross-claims or counterclaims against each other,[10] and neither of them did. Had the Association asserted a claim against Rosenberger in the 2013 lawsuit, then Rosenberger would have been required to assert his declaratory judgment claim at that time if it arose from the same transaction or occurrence that was the subject matter of the Association's claim against him.[11] Similarly, had Rosenberger chosen to assert a claim against the Association in the 2013 lawsuit, he would have

---

[8] *Ingersoll-Rand Co.*, 997 S.W.2d at 207 ("*Res judicata*, however, does not bar a former defendant who asserted no affirmative claim for relief in an earlier action from stating a claim in a later action that could have been filed as a cross-claim or counterclaim in the earlier action, unless the claim was compulsory in the earlier action.").

[9] *Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 607 (5th Cir. 2021) (citing *Ingersoll-Rand Co.*, 997 S.W.2d at 207).

[10] *See* Tex. R. Civ. P. 97(e) (cross-claim against co-party is permissive); *State & Cty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001).

[11] *See* Tex. R. Civ. P. 97(a); *Miller*, 52 S.W.3d at 696.

4

been required by res judicata to assert in that action all of his claims against the Association arising from the subject matter of the cross-claim.[12] But because there were no claims asserted between them in the 2013 lawsuit, Rosenberger was not required to assert his declaratory judgment claim then, and res judicata does not bar it now.

The record shows that the alignment of interests between the Association and Rosenberger changed during the pendency of the 2013 lawsuit due to the Association's November 2014 change in directorship. To be sure, a change in directorship of an association that is a party to litigation can result in a change in legal strategy, and that appears to have occurred here. Clearly, the Association no longer desired to stand behind the OOTR agreements after November 2014, as reflected by the agreed judgment in the 2013 lawsuit declaring the agreements void. Although the alignment of interests between Rosenberger and the Association may have ended after November 2014, there is no summary-judgment evidence that the Association or Rosenberger asserted a claim against the other before judgment. For that reason, Rosenberger's declaratory judgment claim against the Association was not compulsory in the 2013 lawsuit. I agree with the majority that res judicata will not support the summary judgment.

**B.    OOTR Agreement**

When ruling on a motion for summary judgment, the court considers among other things the "pleadings" and "admissions" on file at the time of the hearing.[13] Judicial admissions in an opposing party's pleadings may be relied on to support a

---

[12] *See Getty Oil Co. v. Ins. Co. of N. Am*, 845 S.W.2d 794, 800 (Tex. 1992).

[13] *See* Tex. R. Civ. P. 166a(c).

5

summary-judgment motion.[14]  For summary-judgment purposes, a movant may treat the non-movant's pleaded allegations as truthful judicial admissions.[15]

In his second amended answer and counterclaim, Rosenberger alleged that he prepared the OOTR agreements.  He also described their basic nature as allowing owners to "pre-pay" their monthly assessments.  According to Rosenberger, under the OOTR's terms, "an owner who prepaid assessments then owes the Association reduced assessments or no assessments until the owner is fully reimbursed, with interest."  Rosenberger alleged that he "entered into an OOTR with the Association using precisely the same terms and conditions as were offered to other owners."  Rosenberger also filed an affidavit in response to the Association's summary-judgment motion.  In his affidavit, he restated under oath many of the assertions contained in his pleading, such as that an owner who made repairs in reliance on the OOTR was prepaying assessments and thus owed reduced assessments until fully reimbursed.  He averred that he executed an OOTR for his own unit on "identical terms to all the other OOTRs."  The Association was entitled to rely on these assertions for summary-judgment purposes, and the trial court was entitled to consider them in ruling on the summary-judgment motion.

As its second ground for summary judgment, the Association argued that the OOTR agreement is void because its terms affected owners' monthly assessment obligations and thus required approval in accordance with the Association's condominium declaration (the "Declaration"), but no approval was obtained.

Rosenberger disputes these propositions.  First, he argues that it was not necessary to amend the Declaration for the Association and owners to execute a

---

[14] *See Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 828 (Tex. 2022).

[15] *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 819 (Tex. 2021).

6

valid OOTR. I disagree. The Association attached to its motion certified copies of relevant excerpts of the governing Declaration.[16] Article 8.1(a) states:

> 8.1     AMENDMENTS TO DECLARATION; APPROVAL OF OWNERS AND MORTGAGEES.
>
>      a.      The consent of the Owners of Units to which at least sixty-seven percent (67%) of the votes in the Association are allocated and the approval of First Mortgagees holding mortgages on Units which have at least fifty-one percent (51%) of the votes of Units subject to mortgages **shall be required to add or amend any provision to this Declaration, including those provisions which provide for, govern or regulate any of the following**:
>
>      . . .
>
>      (2)     **Assessments**, assessment liens or subordination of such liens; . . . .

(Emphasis added).[17]

Further, Article 8.1(e) states:

>      e.      Any amendment to the Declaration must be approved by the requisite percentages of ownership interest at a meeting called by the Association, so long as such meeting is required by law. Should the meeting requirement not be mandated by law, an amendment may be effected with the certification by the Secretary of the Association that the necessary Owner approval was obtained, or by obtaining the signatures of the Owners who hold the requisite percentage ownerships.

---

[16] Relevant excerpts of the Declaration are sufficient to shift the summary-judgment burden; it was not necessary for the Association to attach the entire document. *See Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023) ("We hold that submitting the entire contract was not necessary to shift the burden to Wal-Mart to identify other contract language, if any, that is necessary to explain, complete, or contextualize the passages Xerox relied on to support its motion.").

[17] The Property Code also provides that a condominium declaration may not be amended except at a meeting of the apartment owners at which the amendment is approved by the holders of at least 67 percent of the ownership interests. Tex. Prop. Code § 81.111.

We interpret declarations governing condominiums in accordance with contract interpretation rules.[18] Those rules are well-established, so I do not repeat them. The material OOTR terms at issue, as Rosenberger himself has described them in his pleadings and under oath, unquestionably purport to add or amend terms "providing for, governing, or regulating" the owners' obligations to pay assessments. Therefore, approval of those terms in accordance with the Association's Declaration was required.

The Association contends that approval was not obtained. The only summary-judgment evidence offered in support of this factual assertion is the verified petition of Geraldine G. Martisek, who was a plaintiff in the 2013 lawsuit. In that pleading, Martisek alleged that she owns a unit in the Walden Pond condominium development and is a member of the Association. Martisek alleged facts pertaining directly to the OOTR agreements and the absence of approval for them. She stated that some or all of the defendants reportedly had entered into agreements with the Association, which purport to relieve the respective owners of the duty to pay some or all assessments. Further, she asserted that the Association "has not held either a meeting of the members or of the Board of Directors of [the] Association to approve or authorize any such agreements, and any such agreements are contrary to the governing documents of the Association." In the verification at the end of the pleading, Martisek swore that she is an owner of a unit in the condominium development, that she has served on the board of directors, that she has read the petition, and that every factual statement contained in it is within her personal knowledge and is true and correct. Martisek signed the verification before a notary public.

---

[18] *AMI Ass'n Mgmt., Inc. v. Sprecher*, No. 01-15-00791-CV, 2017 WL 3526762, at *4 (Tex. App.—Houston [1st Dist.] Aug. 17, 2017, no pet.) (mem. op.); *Aghili v. Banks*, 63 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Although Martisek's pleading verifies all the facts stated within it, the supreme court has been clear that even verified pleadings generally are not competent summary-judgment evidence.[19]  I would urge the supreme court to revisit these cases.  In my view, a verified pleading meeting the requirements of an affidavit and rule 166a should be properly considered as summary-judgment evidence.   Martisek's pleading meets all the requirements of rule 166a.  Substantively, moreover, it is no different from an affidavit to the extent it states facts.  Were its factual contents copied and pasted into a new document and sworn before a notary public using the same verification language, it would unquestionably be proper summary-judgment proof.  We should not deny it legal effectiveness as summary-judgment evidence merely because of its title.   I question the practical utility of requiring summary-judgment movants to spend time and resources creating new evidence duplicating existing evidence that already satisfies summary judgment and evidentiary standards.   But for the holdings of *Hidalgo* and *Laidlaw Waste Systems*, I conclude that the Association conclusively established that no approval was obtained for the OOTR agreement in accordance with the Declaration.

Further, Rosenberger failed to create a genuine and material fact issue on this point.  In his summary-judgment response, he asserted that the only other serving board member at the time, Susan Kinder, "approved the basic concept of the OOTR."  Rosenberger interpreted his conversation with Kinder as a meeting of the board.   In his affidavit, Rosenberger stated further that Kinder expressly authorized him to proceed with the OOTR.  Presuming the truth of these assertions, the events and conversations Rosenberger describes do not comply with Article 8.1(a) and (e) for amending or adding declaration terms and duties regarding

---

[19] *Laidlaw Waste Sys., (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971).

9

monthly assessments. Rosenberger also contended that the OOTR terms were authorized under the Association's bylaws, but the record does not show that he attached any relevant excerpts of the bylaws to his response.

Excluding consideration of Martisek's verified pleading, the Association did not present evidence to support its assertion that the OOTR agreements were not approved in accordance with the Declaration. Therefore, the summary judgment cannot rest on this alternative ground.

**Rosenberger's Breach of Fiduciary Duty Counterclaim**

In his second and third issues, Rosenberger contends the trial court erred by refusing to submit to the jury his breach of fiduciary duty counterclaim in which he sought damages from the Association for its failure to "deal with" alleged water penetration damage to his unit in 2012. Rosenberger says the trial court erroneously ruled that his counterclaim was barred by the statute of limitations. The majority sustains this issue. I would overrule it because the trial court's limitations ruling is correct on the merits.

A four-year limitations period applies to a breach of fiduciary duty claim.[20] The limitations period begins to run when the cause of action accrues.[21] A claim for breach of fiduciary duty accrues when the claimant knows or by ordinary diligence should know of the wrongful act and the resulting injury.[22]

In his live pleading, Rosenberger asserted a counterclaim against the Association for breach of fiduciary duty. Rosenberger alleged that, under the Association's bylaws, the Association had a fiduciary duty to "deal with"

---

[20] Tex. Civ. Prac. & Rem. Code § 16.004(a)(5).

[21] *Id.*

[22] *Berry v. Berry*, 646 S.W.3d 516, 523-24 (Tex. 2022); *Williard Law Firm, L.P. v. Sewell*, 464 S.W.3d 747, 752 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

10

Rosenberger's condominium unit "upon his unit suffering damage."[23]  According to Rosenberger, this claim is based on the facts that his unit suffered water penetration damage in May 2012, and the Association informed him at that time that it would not or could not pay for any repairs because it did not have the money and it lacked insurance.  Assuming this is true, Rosenberger in reasonable diligence would have or should have known of his injury in May 2012 because he would have known at that time of the physical damage to his unit and of the Association's lack of insurance or refusal to "deal with" the damage.  Rosenberger did not assert his counterclaim until, at the earliest, July 20, 2016, more than four years from the date it accrued.[24]  Thus, his fiduciary duty counterclaim based on alleged May 2012 water penetration damages is time-barred.

Rosenberger argues alternatively that his counterclaim should be considered timely filed under Civil Practice and Remedies Code section 16.069.  That section provides:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.[25]

---

[23] Article XI, section 11 of the bylaws states that, as part of an owner's obligations, each owner "irrevocably appoint[s] the Association such person's attorney-in-fact to deal with the Owner's Condominium Unit upon its damage, destruction or obsolescence or in a possible emergency situation."  The bylaws do not define the phrase "deal with."

[24] In his July 20, 2016 pleading, Rosenberger did not specifically assert a "breach of fiduciary duty" counterclaim, but he did complain of water damage and of the Association's alleged failure to provide insurance.  His amended counterclaim, filed August 18, 2017, asserted a counterclaim for breach of fiduciary duty.

[25] Tex. Civ. Prac. & Rem. Code § 16.069.

11

He contends that his counterclaim arose out of the same transaction as the Association's claim against him and that he filed his counterclaim within thirty days of the Association's suit. I agree he filed his counterclaim within the thirty-day window, but I disagree that his breach of fiduciary duty counterclaim arose out of the same transaction or occurrence that is the basis of the Association's claim against him.

Texas courts use a "logical relationship" test to determine whether a counterclaim arises out of the same transaction or occurrence as an earlier action.[26] "When the same facts . . . are significant and logically relevant to the various causes of action, the 'logical relationship' test is satisfied."[27]

Applying this test here demonstrates that Rosenberger's untimely counterclaim is not saved by section 16.069. The Association sued Rosenberger for breaching the condominium Declaration by failing to pay his monthly assessments from 2012 forward. Facts essential to this claim are that the Declaration requires all owners to pay assessments and that Rosenberger failed to do so beginning in 2012. In contrast, Rosenberger's counterclaim against the Association is for breach of fiduciary duty. The source of the alleged duty is Article XI, section 11 of the bylaws, which purportedly burdens the Association with a fiduciary duty to "deal with" property damage to an owner's unit. Facts essential to this counterclaim are that Rosenberger suffered water penetration damages in May 2012 and that the Association failed to "deal with" those damages.

---

[26] *See Allen Drilling Acquisition Co. v. Crimson Expl. Operating Inc.*, 558 S.W.3d 761, 775 (Tex. App.—Waco 2018, pet. denied); *Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 653 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Williams v. Nat'l Mortgage Co.*, 903 S.W.2d 398, 404 (Tex. App.—Dallas 1995, writ denied).

[27] *Williams*, 903 S.W.2d at 404; *Jack H. Brown & Co. v. Nw. Sign Co.*, 718 S.W.2d 397, 400 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

The fact that Rosenberger stopped paying monthly assessments in 2012 is not relevant to prove his counterclaim that the Association allegedly failed in its duty to repair or "deal with" water penetration damages to Rosenberger's unit. Nor is the fact that the Association allegedly failed in its duty to repair or "deal with" water penetration damages to Rosenberger's unit in May 2012 relevant to prove the Association's claim that Rosenberger breached the Declaration by failing to pay assessments from 2012 to 2021. These respective facts are not significantly and logically relevant to both claims. In this circumstance, I conclude the logical relationship test fails. Therefore, Rosenberger's breach of fiduciary duty counterclaim does not arise out of the same transaction or occurrence that is the basis of the Association's claim.

The only matter to which all of these facts are relevant is Rosenberger's *affirmative defense of excuse*. According to Rosenberger, his failure to pay assessments was excused because he was told by the Association's then-property manager that the Association lacked the funds or insurance to cover his damages and that he should instead make the repairs himself and then credit those costs against his assessments.[28] Rosenberger's May 2012 property damage is relevant to his breach of fiduciary duty claim and to his excuse defense; but it is not significantly or logically relevant to the Association's claim that he breached the Declaration by failing to pay assessments from 2012 to 2021. In reversing the judgment, the majority improperly merges Rosenberger's counterclaim with his affirmative defense rather than respecting their distinctiveness.[29] But under section 16.069 the question is not whether Rosenberger's counterclaim *coupled* with his

---

[28] Rosenberger submitted his excuse defense to the jury in question two, but the jury found that his failure to pay assessments was not excused.

[29] *See Izen v. Laine*, 614 S.W.3d 775, 790-91 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (discussing differences between claims for relief and affirmative defenses).

13

affirmative defenses *together* arise from the same transaction as the Association's original claim. The only relevant question is whether Rosenberger's *counterclaim* arises out of the same transaction as the Association's claim against him. It does not. The text of section 16.069 will not accommodate a counterclaimant's reliance on affirmative defenses to save an otherwise expired counterclaim.

Therefore, section 16.069 is not satisfied and does not apply. For these reasons, Rosenberger's breach of fiduciary duty counterclaim is barred by limitations. I therefore dissent from the majority's contrary holding.[30]

I would overrule Rosenberger's second and third issues and hold that his breach of fiduciary duty counterclaim to recover for 2012 water damage cannot be a part of any proceedings on remand.

/s/     Kevin Jewell
          Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer (Bourliot, J., majority).

---

[30] While a motion in limine is not the correct procedural mechanism to decide an affirmative defense such as limitations, *see Barraza v. Koliba*, 933 S.W.2d 164, 166 (Tex. App.—San Antonio 1996, writ denied) (op. on reh'g) (discussing court of appeals' prior ruling that trial court erred in ruling on affirmative defense of limitations during motion in limine hearing without having a proper pre-trial motion before it or requiring proof), Rosenberger raises no complaint about procedure in his brief. He challenges the merits of the ruling, and the parties do not appear to contend that any factual disputes exist.

14