**Affirmed in Part, Reversed and Remanded in Part, and Majority Opinion and Concurring and Dissenting Opinion filed October 17, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00467-CV

---

### ROBERT KELTON ROSENBERGER, Appellant

### V.

### HARVEY LEMASTER D/B/A INSURANCE OFFICE OF MONTGOMERY, Appellee

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16-CV-0524-A**

---

## NO. 14-21-00511-CV

---

### ROBERT  KELTON  ROSENBERGER, Appellant

### V.

### WALDEN POND OWNERS ASSOCIATION, Appellee

## MAJORITY OPINION

Robert Rosenberger owns unit 403 in the Walden Pond Condominiums. These consolidated appeals concern a lawsuit by the Walden Pond Owners Association against Rosenberger for unpaid monthly assessments on his condominium and a lawsuit by Rosenberger against the Association's insurance agent, Harvey LeMaster, regarding the lack of insurance coverage for damage to unit 403 occurring during Hurricane Harvey. The trial court entered judgments against Rosenberger in both cases: a final judgment favoring the Association after a jury trial in the former action and a no-evidence summary judgment favoring LeMaster in the latter action. We affirm in part and reverse and remand in part the judgment favoring the Association, and we affirm the judgment favoring LeMaster.

### *Background*

**The Association's lawsuit.** Rosenberger purchased unit 403 in 2011. The Association alleged that he stopped paying his mandated monthly maintenance assessment shortly after the purchase. Under the Association's governing documents, the assessments are collected to pay for "Common Expenses," including insurance; management costs; repair, replacement, and maintenance of common elements including landscaping; taxes; accounting fees; construction of other facilities; swimming pool upkeep; roofs and exterior surfaces of all buildings and carports; garbage pickup; pest control; outdoor lighting; and security.

According to Rosenberger, the Association had been in financial straits for

some time and was neglecting maintenance and repairs on some but not all of the condominium buildings to such an extent that the City of Friendswood was threatening residents in those buildings with fines and potential demolition of their units. Because of this, Rosenberger said, many unit owners in unrenovated buildings were refusing to pay their assessments.

Rosenberger asserted that his own unit suffered water penetration damage in 2012 due to the Association's failure to maintain the roof above the unit. Rosenberger insisted that the Association's manager at the time told him to make repairs himself and then credit the cost of those repairs against his monthly assessments as that was the customary practice.

Rosenberger was elected to the Association's board of directors in 2012 and became its president. Susan Kinder was elected to the board at the same time and became treasurer, and Geraldine Martisek was also elected but resigned shortly thereafter, leaving the board with just two members, Rosenberger and Kinder. As president, Rosenberger proposed and created agreements that he entitled Owners Option to Renovate, or "OOTRs." Under these agreements between the Association and several individual owners, the owners were purportedly authorized to make repairs to the exterior of their unit buildings at their own expense in exchange for a reduction in the future assessments that the owner would be required to pay to the Association. Rosenberger asserted that Kinder approved of the concept in a telephone call, and Rosenberger signed his own OOTR both as owner of unit 403 and as president of the Association. According to Rosenberger, the Association initially accepted the benefits of the OOTRs, but subsequent leadership moved to void the OOTRs, ignore the renovations that were performed, and compel full payment of the assessments. Kinder, on the other hand, has asserted that she never authorized the OOTRs, told Rosenberger he did not have

3

authority to sign contracts on behalf of the Association, and told him he needed to pay his assessments.

The lawsuit between Rosenberger and the Association began in 2016 when another condominium owner sued the Association to prevent foreclosure for nonpayment of assessments and the Association counter-claimed against that owner and named Rosenberger as a third-party defendant. The other owner subsequently settled with the Association. In its action against Rosenberger, the Association asserted that its governing documents constituted a contract between the Association and the owners of condominium units and that Rosenberger breached his obligations under the governing documents by failing to pay his assessments, among other things. The Association further asserted Rosenberger's obligations were secured by a lien on unit 403. The Association sought damages, foreclosure, and a permanent injunction.

Rosenberger answered in the lawsuit and filed a counterclaim. In his answer, Rosenberger included the affirmative defense of offset based on his making repairs to his building for which the Association had been responsible. Rosenberger asserted that he provided over $30,000 in services and materials to the Association in this manner. In his counterclaim, Rosenberger alleged that the Association breached fiduciary duties it owed to him regarding property damage he allegedly incurred in May 2012 due to a leaky roof, and he requested a declaratory judgment confirming the validity of his OOTR agreement.

The Association filed a motion for partial summary judgment challenging Rosenberger's claim seeking a declaration on the validity of his OOTR. The motion raised two grounds: (1) res judicata based on a prior lawsuit brought by four condominium owners who had not signed OOTRs against the Association and twelve of the owners who had signed OOTRs and in which Rosenberger

4

intervened, and (2) the OOTR was invalid because it required an amendment to the Association's governing documents and no such amendment occurred. The trial court granted the Association's motion, stating in its order that Rosenberger's "request to declare the [OOTR] valid and enforceable is barred due to a prior judgment declaring such agreements invalid, unlawful, and void."

The trial court also granted the Association's pretrial motion in limine regarding any evidence concerning Rosenberger's alleged 2012 water leak damage. The Association asserted the claim was barred by the applicable statute of limitations, and Rosenberger argued the claim was still valid as an offset to the Association's claim for past due assessments. The trial court subsequently ruled on the merits that the claim was barred by limitations.

At the conclusion of trial, a nonunanimous jury found that (1) Rosenberger failed to comply with the governing documents by failing to pay his monthly assessments from July 2012 through May 2021; (2) his failure to pay was not excused; (3) the Association's damages resulting from Rosenberger's failure to pay assessments, interest, and late charges totaled $102,203.79; (4) the Association incurred attorney's fees in prosecuting its case of $61,291.15 and would incur additional specified amounts in the event of an appeal; and (5) the Association was not failing to comply with the governing documents. Because of these answers, the jury was not required to answer other questions in the charge. The trial court had rejected jury submissions from Rosenberger regarding his alleged 2012 water damage claim. In its final judgment, the trial court awarded the Association the amounts found by the jury for damages and attorney's fees. The trial court also ordered foreclosure of the Association's lien on Rosenberger's condominium.

**The lawsuit against LeMaster.** Rosenberger further has asserted that in July 2016, when he was unable to obtain reliable information regarding insurance

coverage from the Association, he contacted LeMaster, who was then the Association's insurance agent. Rosenberger maintains that the Association's governing documents require it to insure the condominium buildings. According to Rosenberger, LeMaster assured him both in person and in a letter that (1) LeMaster was indeed the Association's insurance agent; (2) all units were at that time insured, either under a builder's risk policy or a general liability policy through Scottsdale Insurance Company and wind and hail coverage through Texas Windstorm Association; (3) the building containing Rosenberger's condominium specifically was insured through Scottsdale and Texas Windstorm; and (4) that building was the most insurable of all the buildings despite some minor repairs having been requested.

Rosenberger asserts that in reliance on LeMaster's representations, he neither pressured the Association to provide coverage for the building nor sought to obtain separate insurance coverage for his condominium. In August 2017, Hurricane Harvey struck the Houston area, and Rosenberger contends that it caused damage to his condominium. Rosenberger submitted claims to LeMaster for the damage, but LeMaster reportedly informed Rosenberger in a September 2017 telephone call that unit 403 did not have insurance coverage for the loss. A subsequent letter from LeMaster confirmed the lack of coverage on Rosenberger's building. Rosenberger further asserts that after July 30, 2016 and before September 2, 2017, LeMaster never informed him that the prior representations about coverage were either false when made, misleadingly incomplete, or changed by circumstances so that they were no longer true. Rosenberger contends that he was injured by the lack of reimbursement from insurance.

Rosenberger filed suit against the Association and LeMaster in which he contended that the water damage to his unit was not the result of flooding or of

6

windstorm damage but was caused by "pre-existing leaks in the exterior envelope[]" of the unit.[1] He alleged that the Association had failed to comply with its obligation to properly maintain the exterior of his unit and raised several related causes of action against it. Against LeMaster, Rosenberger stated claims for fraud and negligent misrepresentation.

LeMaster filed a no-evidence motion for summary judgment, asserting, as will be discussed in more detail below, that Rosenberger could not produce any evidence in support of several elements of his claims. Rosenberger responded by filing his own declaration, two excerpts from recorded telephone calls between himself and LeMaster, and two letters from LeMaster. At the hearing on the motion, the trial court asked whether Rosenberger was asserting he sustained wind-driven rain damage or just flood related damage; in response to which, Rosenberger's counsel explained that he sustained water penetration damage from the hurricane—as water came in through the roof and from around the windows—and not flood damage.

After the trial court granted LeMaster's motion for summary judgment, Rosenberger filed a motion to reconsider, to which he attached a supplemental declaration in which he explicitly stated that the water damage was not caused by flooding but was caused by water that came in through a roof that had a substantial number of missing tiles. The trial court denied the motion to reconsider, severed the claims against LeMaster from the remaining claims against the Association, and this appeal followed.

### Discussion

---

[1] Rosenberger was initially joined as a plaintiff in the lawsuit by another Walden Pond condominium owner who died during the pendency of the case. The other owner's estate did not pursue the lawsuit.

As discussed above, Rosenberger appeals both from the final judgment in the Association's lawsuit against him and from the final summary judgment entered in his case against LeMaster. We will address the contentions in each appeal in turn, beginning with the Association's lawsuit.

## I. Appeal in the Association's Lawsuit

Rosenberger raises thirteen issues in his appeal of the Association's lawsuit against him, alleging (1) the trial court erred in granting summary judgment against Rosenberger's declaratory judgment action concerning the validity of his OOTR; (2) the trial court erred in failing to submit Rosenberger's breach of fiduciary duty claim to the jury related to May 2012 water penetration damage; (3) the trial court erred in failing to submit Rosenberger's proposed breach of fiduciary duty jury questions; (4) Rosenberger timely paid his monthly assessments in advance and the jury's contrary finding is wrong as a matter of law; (5) the trial court erred in rejecting Rosenberger's payment defense; (6) the evidence is legally and factually insufficient to support the jury's finding that Rosenberger failed to pay his assessments; (7) the trial court erred in overruling Rosenberger's objections to charge Question 1, regarding whether Rosenberger failed to comply with the governing documents by failing to pay his monthly assessments; (8) the evidence is legally and factually insufficient to establish the amount of allegedly unpaid assessments, interest, and late charges; (9) the trial court erred in overruling Rosenberger's objections to charge Question 3, concerning the amount of damages; (10) Rosenberger was excused from paying the monthly assessments as a matter of law; (11) the jury's failure to find Rosenberger's performance was excused is against the great weight and preponderance of the evidence; (12) the trial court erred in refusing Rosenberger's proposed charge instruction for estoppel by contract; and (13) the trial court erred in awarding attorney's fees to the

Association in the absence of a valid claim.

We will begin our analysis by considering Rosenberger's first issue challenging the grant of summary judgment favoring the Association on the validity of the OOTRs before turning to his second issue concerning the breach of fiduciary duty claim and the statute of limitations. Because we sustain those first two issues, we will need to discuss the remainder of the issues in the first of the consolidated appeals only briefly.

## A. Summary Judgment on the OOTRs

As indicated above, the trial court granted partial summary judgment favoring the Association against Rosenberger's declaratory judgment action regarding the validity of his OOTR, thus preventing Rosenberger from asserting at trial that the OOTR allowed him to, in essence, prepay or offset the monthly assessments by making and paying for repairs to his condominium building that were the responsibility of the Association. In its motion, the Association asserted as grounds both that Rosenberger's declaratory judgment action was barred by application of the doctrine of res judicata and that the OOTRs were void because they were in conflict with the Association's governing documents. Although the trial court expressly based its grant of summary judgment on the res judicata ground, we will consider both grounds in this appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex. 1996) ("[A]ppellate courts should consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal [and] may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy."); *see also Juda v. MarineMax, Inc.*, No. 01-18-00138-CV, 2018 WL 6693586, at *4 n.3 (Tex. App.—Beaumont Dec. 20, 2018, no pet.) (mem. op.); *Hensley v. Vill. of Tiki Island*, No. 14-03-00423-CV,

9

2004 WL 2162637, at *8 n.10 (Tex. App.—Houston [14th Dist.] Sept. 28, 2004, pet. denied) (mem. op.).

In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). A party moving for traditional summary judgment under Texas Rule of Civil Procedure 166a(c) bears the burden of proving that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Id.*[2] The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). Summary judgment for a defendant is proper only when the defendant negates at least one element of a plaintiff's theory of recovery or pleads and conclusively establishes each element of an affirmative defense. *Hilburn v. Storage Tr. Props., LP*, 586 S.W.3d 501, 506 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

### 1. Res Judicata

The doctrine of res judicata, or claim preclusion, bars claims that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022). It requires proof of (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them;

---

[2] Although the Association did not specify in its motion whether it sought judgment under either the traditional or no-evidence standards for summary judgment, the motion appears to seek traditional summary judgment. *See* Tex. R. Civ. P. 166a(c), (i). Regardless, we construe a summary judgment motion that does not clearly and unambiguously state that it is being brought as a no-evidence motion as a traditional motion. *See, e.g.*, *Circle X Land & Cattle Co. v. Mumford I.S.D.*, 325 S.W.3d 859, 862 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

and (3) a second action based on the same claims as were raised, or could have been raised, in the first action. *Id*.

**The evidence.** In support of its res judicata argument, the Association attached a petition, a plea in intervention, an agreed order, a grant of summary judgment, and a final judgment all from a prior lawsuit, along with a notice of condominium board election results. The lawsuit in question was filed in 2013 by four owners of Walden Pond condominiums who did not sign OOTRs against the Association and twelve condominium owners who did sign OOTRs. In their petition, the plaintiffs alleged that the defendant owners had failed to pay their required assessments and the Association had failed to take required measures to collect the assessments. The plaintiffs sought a declaratory judgment that they were authorized to bring the action under Property Code section 82.161[3] and that the OOTRs are illegal and void because they "are contrary to the governing documents of the association." The plaintiffs additionally sought a permanent injunction requiring the payment and collection of the assessments.

Rosenberger—who was Association president at the time the 2013 lawsuit was filed but was not originally a party to the lawsuit—filed a plea in intervention in the case, asserting that he had a justiciable interest in the proceedings as a member of the Association and an owner in the condominium complex. As his only allegation, Rosenberger stated that "Plaintiff's [sic] have maliciously interfered and overtly thwarted the efforts of the Board and owners to conduct the order of business to direct the Owners Association," and as his only request for relief, Rosenberger requested that "Plaintiff's [sic] take nothing by this suit."

---

[3] Among other things, this section creates a claim for relief for any person adversely affected by the violation of a condominium association's bylaws or declarations. Tex. Prop. Code § 82.161(a).

The election results state that on November 12, 2014, the Association held its annual meeting at which three directors were elected: Steve White, Catherine Dunning, and Isaac Reyes. Two of those new directors were also plaintiffs in the 2013 lawsuit: White and Dunning. In other words, the plaintiffs effectively won control over the Association board during the pendency of the lawsuit.

The agreed order attached to the Association's motion is dated July 20, 2015 and states that it resulted from a joint motion filed by the four plaintiffs and the Association. In the agreed order, it declares that the plaintiffs were authorized to bring the action and that

> [a]ny agreement purported to have been made by Defendant Association by which Defendant Association agreed or would agree to accept payment of less than the full monthly assessment owing on a condominium unit and that the owner thereof could use the remainder . . . to repair the exterior of the subject condominium unit was and is invalid because [] neither the members of the Defendant Association nor the Board . . . authorized any such agreements and, further, any such agreements are contrary to the governing documents of Defendant Association and, therefore, are unlawful and void.

The agreed order further states that the plaintiffs had nonsuited the remainder of their claims against the Association and the Association was to take nothing on any claims it had made in the lawsuit. The order is signed "Agreed and Approved in All Respects" by both a lawyer for the plaintiffs and a lawyer for the Association.

The order granting summary judgment appears to be dated July 24, 2015, although the precise date is difficult to read. The order states that the four plaintiffs moved for summary judgment against the intervenor (Rosenberger), the plaintiffs "disprove[d] at least one element of Intervenor's claims against Plaintiffs" and "Intervenor has not provided competent evidence to support at least one element of his claims against Plaintiffs." The order then states that Rosenberger take nothing

12

on his claims. The order does not provide any specifics regarding what claims Rosenberger raised or what was proven or not proven. The associated motion for summary judgment is not in the record.

In the final judgment dated August 14, 2015, the court states that "all claims and causes of action asserted in this action that have not heretofore been severed have been adjudicated in full or voluntarily dismissed." The judgment then lists three prior orders of the court as setting forth the court's disposition in the case, apparently including the two orders discussed above as well as an additional order not included in the summary judgment record in the present case. The judgment further denied any relief not expressly granted in those prior orders. There is no breakdown or explanation in the judgment, or anywhere else in the summary judgment record, of what claims may have been severed from the main action or "voluntarily dismissed," or what became of the other twelve defendants (the OOTR signatories) in the 2013 lawsuit.

**Analysis.** Again, res judicata requires proof of (1) a prior final judgment on the merits; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised, or could have been raised, in the first action. *See Rosetta Res.*, 645 S.W.3d at 225. To prevail on a motion for summary judgment asserting res judicata, a movant must produce evidence, including verified or certified copies of the judgment and pleadings from the earlier suit, sufficient to establish the applicability of res judicata as a matter of law. *E.g.*, *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 237 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Here, the Association's summary judgment evidence and arguments were clearly lacking in several key respects, particularly concerning the second element requiring an identity of parties in the two actions.

In addressing the second element in its motion, the Association pointed out that both Rosenberger and the Association were parties in the 2013 lawsuit and 2013 plaintiffs White and Dunning had been elected to the Association's board by the time the final judgment was entered. The Association suggests that this meant White and Dunning were then controlling the Association or representing its interests. However, Rosenberger expressly intervened in the litigation to support the Association, and Rosenberger and the Association never became adverse parties. "[R]es judicata applies only to adverse parties. Where two parties are aligned in the first action and no issues are drawn between them, the judgment in that action does not preclude later claims between those parties." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992). "For the purposes of res judicata, co-parties have issues drawn between them and become adverse when one co-party files a cross-action against a second co-party." *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). Neither the Association nor Rosenberger ever filed a claim against the other in the 2013 lawsuit. Moreover, the Association never realigned as a plaintiff and did not join in the motion for summary judgment against Rosenberger.[4]

In its reply to Rosenberger's response to the motion for summary judgment, the Association argued that it is in privity with the 2013 plaintiffs, but the Association did not provide a basis for that conclusion other than the fact that two of the 2013 plaintiffs were at one time board members for the Association. The Association provides no authority that supports this position, and we are aware of

---

[4] The Association appears to be suggesting that its separate legal existence apart from its board members should be ignored in this analysis, but it has provided no legal authority or argument for doing so.

none.[5]

In its brief to this court, the Association additionally suggests that res judicata applies because both the 2013 lawsuit and the present action pertain to the validity of a common contract. In support they cite two cases applying the doctrine of virtual representation. *See Caudle v. City of Garland*, 583 S.W.2d 826, 827–28 (Tex. App.—Dallas 1978, writ ref'd n.r.e.); *Oak Lawn Pres. Soc'y v. Bd. of Managers of Dallas Cty. Hosp. Dist.*, 566 S.W.2d 315, 317–18 (Tex. App.—Dallas 1978, writ ref'd n.r.e.). This argument, however, cannot support the grant of summary judgment in this case because it was not raised in the motion. *See Cincinnati Life*, 927 S.W.2d at 627.[6] The trial court erred in granting partial summary judgment favoring the Association on res judicata grounds.

---

[5] People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation. *Id*. Privity is not established by the mere fact that the parties may happen to be interested in the same question or in proving the same facts. *Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 560 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The 2013 plaintiffs sued pursuant to Property Code section 82.161 as persons allegedly affected by violations of the Walden Pond declarations to force the 2013 defendants to pay assessments and force the Association to collect those assessments. The Association is suing in the present litigation to enforce the declarations as a contract right. Although the two parties are certainly interested in some of the same questions and in proving similar facts, they do not share an identity of interests in the basic legal right that is the subject of litigation.

[6] Additionally, we note that since the cited cases issued, the application of res judicata through virtual representation has been disapproved based on due process concerns, at least in federal-question claims. *Taylor v. Sturgell*, 553 U.S. 880, 885 (2008); *Lee v. Rogers Agency*, 517 S.W.3d 137, 155 (Tex. App.—Texarkana 2016, pet. denied). Also, even assuming the doctrine of virtual representation could apply here, it requires that a prior court have ruled on the validity of the contract, which has not been established on this record where the evidence indicates only that the issues regarding the OOTRs were resolved in the prior case by an agreed order. *See Caudle*, 583 S.W.2d at 827-28; *Oak Lawn Pres. Soc'y*, 566 S.W.2d at 317–18. There is no evidence that any court has determined that the OOTRs are invalid or illegal.

## 2. Validity of the OOTR

In its motion for partial summary judgment, the Association additionally asserted that Rosenberger's OOTR was illegal and void because it violated the Association's governing documents in two ways and no vote had been taken to amend the conflicting portions of the governing documents. Specifically, the Association asserted the OOTR violated provisions specifying that (1) all owners must pay monthly assessments for the repair and maintenance of the common areas, among other things, and (2) the Association has the responsibility for repairs and renovations to the general elements and not the individual condominium owners.

In comparison to its res judicata arguments, the Association's arguments based on the governing documents appear like afterthoughts. As stated, the Association based these arguments on an alleged conflict between the OOTRs and the governing documents, but it failed to attach a copy of an OOTR to its motion and only attached a small excerpt from the Association's declarations. Our review of a trial court's summary judgment is limited to the evidence before the court when it granted the motion. *E.g.*, *Di Angelo Publ'ns, Inc. v. Kelley*, No. 14-20-00546-CV, 2022 WL 401561, at *2 (Tex. App.—Houston [14th Dist.] Feb. 10, 2022, no pet.) (mem. op.); *see also Young v. Gumfory*, 322 S.W.3d 731, 738 n.3 (Tex. App.—Dallas 2010, no pet.) (applying same restriction in partial summary judgment case). Although a copy of Rosenberger's OOTR had been attached to a third party's application for a temporary restraining order earlier in the case, no complete copy of the Association's governing documents appears in the record as of the time of the trial court's ruling on the motion for summary judgment or,

indeed, in the clerk's record filed in this court.[7] The excerpt provided contains primarily paragraph 8.1 of the declarations. This paragraph provides, among other things, that consent of at least 67 percent of owners was "required to add or amend any provisions to this Declaration, including those provisions which provide for, govern or regulate . . . (2) Assessments [and] (6) Responsibility for maintenance and repair of the Units and Common Elements."

The Association, however, failed to present any sections of the governing documents that actually conflict with the OOTRs. For example, they did not include any section spelling out the requirements for paying assessments or any provision requiring that only the Association can renovate or repair the common elements. They also did not provide an affidavit from anyone with relevant knowledge. In his response to the motion, Rosenberger pointed out the lack of evidence, and perhaps in recognition of this, in its reply to the response, the Association relied on Rosenberger's summary judgment declaration to fill in the missing evidence. Specifically, the Association quoted Rosenberger as stating "an 'owner complying with the OOTR is making the Association's renovations and repairs . . . thus prepaying assessments.'" But the Association does not allege and did not prove that "prepaying assessments" would violate the governing documents; the Association's argument was instead that the OOTR's effectively released the signing and complying owners from paying assessments in conflict

---

[7] The only complete copy of the Association's declarations in the record was admitted as an exhibit during trial. We assume without deciding that we can consider the OOTR but not the full copy of the declarations. *See generally Salas v. LNV Corp.*, 409 S.W.3d 209, 218 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (explaining that unverified documents attached to pleadings do not constitute summary-judgment proof); *Speck v. First Evangelical Lutheran Church of Hous.*, 235 S.W.3d 811, 816 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("A party must expressly and specifically identify the supporting evidence on file that it seeks the trial court to consider in a summary judgment motion or a response to a summary judgment motion.").

17

with the requirement to do so in the governing documents. Additionally, even in its reply, the Association still failed to provide any section of the Declarations indicating that the Association could not fulfill its obligation to repair the common elements through agreements with individual owners.

The Association also asserted new grounds for partial summary judgment on the validity of the OOTRs in its reply to Rosenberger's response. Specifically, the Association alleged that (1) the failure to provide notice to the owners of an open board meeting to consider the OOTRs violated Texas Property Code section 82.108, and (2) Rosenberger's own OOTR, which he signed both as board president and as an owner, violated Texas Business Organizations Code section 22.230, addressing contracts involving interested directors, officers, and members. Tex. Bus. Orgs. Code § 22.230; Tex. Prop. Code § 82.108. However, a movant is generally not permitted to use a reply to amend its motion for summary judgment or to raise new and independent summary-judgment grounds, particularly not when the reply was filed within two days of the hearing date, as in this case, and the movant did not seek or obtain leave of court. *See Ron v. AirTran Airways, Inc.*, 397 S.W.3d 785, 787 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 378 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Moreover, the Association did not offer any evidence in support of these new allegations.

### 3. Conclusion

The trial court erred in granting summary judgment favoring the Association against Rosenberger's declaratory judgment action regarding the validity of the OOTRs. Accordingly, we sustain Rosenberger's first issue.

### B. Breach of Fiduciary Duty Claim

18

In his second issue, Rosenberger contends that the trial court erred in refusing to submit his breach of fiduciary duty claim and instead ruling that it was barred by the applicable statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(5) (setting four-year limitations period for breaches of fiduciary duties). Rosenberger based this claim on allegations that (1) his condominium unit suffered water penetration damage in May 2012; (2) under the Association's bylaws, it acts as attorney-in-fact for an owner when his condominium unit becomes damaged; therefore, Rosenberger contends, it owed a fiduciary duty to him regarding the damage to his unit; (3) the Association's representative (the property manager) told Rosenberger that there was no money or insurance to cover the damage and that Rosenberger should just take the money out of future assessments; and (4) the Association subsequently sued Rosenberger in this litigation for past due assessments without taking into account the uncovered 2012 damage.

The breach of fiduciary duty claim was a subject of the Association's pretrial motion in limine, but the issue was subsequently raised again in the middle of trial and during the charge conference. The Association initially argues that (1) a ruling on a motion in limine preserves nothing for review, citing *Southwest Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 493–94 (Tex. App.—Fort Worth 1999, pet. denied), and (2) Rosenberger never offered any actual evidence to support his claim. It is clear, however, that although the court initially only considered the issue in a motion in limine, the court subsequently ruled on the merits in a hearing outside the presence of the jury, concluding, as the Association argued, that the claim was barred by limitations. It is also clear that to the extent the trial court's ruling could be considered an evidentiary ruling, although Rosenberger did not provide an offer of proof in the form of testimony, his counsel adequately described the substance of the proposed evidence. *See, e.g.*,

19

*PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 511 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

A statute of limitations is an affirmative defense which a defendant bears the initial burden to plead and prove. *See Nelson v. Gulf Coast Cancer & Diagnostic Ctr. at Se., Inc.*, 529 S.W.3d 545, 548 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988)). A breach of fiduciary duty claim accrues when the claimant knows, or in the exercise of ordinary diligence should know, of the wrongful act and resulting injury. *See Murphy v. Campbell*, 964 S.W.2d 265, 271 (Tex. 1997); *Williard L. Firm, L.P. v. Sewell*, 464 S.W.3d 747, 752 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The specific date by which a plaintiff knew or should have known of an injury is generally a question of fact for the jury. *Williard L. Firm*, 464 S.W.3d at 752 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 47 (Tex. 1998)). Unless evidence conclusively establishes when a party should have known of facts giving rise to a claim, the question is one for the jury. *Id.* (citing *Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006)). "While a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996).

As stated, Rosenberger alleged his condominium unit was damaged by water penetration in May 2012. He does not state when he was told by the Association's representative that there was no coverage for the damage and he should take the money out of his assessments, but it obviously would have been after the damage occurred. The Association filed suit against Rosenberger on the assessments in June 2016, and Rosenberger raised his claim for breach of fiduciary duty less than

a month later. The Association has also noted that demands for payment of the assessments were made on Rosenberger as early as January 2013.

Among the arguments Rosenberger made below and makes on appeal is that he was not injured by the alleged breach of fiduciary duty until the Association attempted to collect the assessments that he believed he was allowed to offset against the lack of coverage or funds for his May 2012 water penetration damage. Rosenberger suggests this occurred when the Association filed its third-party claim against him; the Association notes that demands for payment were made before suit was filed. Regardless, the Association has pointed to no evidence that such a demand was made prior to January 2013, which was less than four years before Rosenberger filed his counterclaim for breach of fiduciary duty. As stated, the date on which a claim accrued is generally a question of fact for the jury. *See Williard L. Firm*, 464 S.W.3d at 752. Based on the facts presented, a jury could reasonably conclude that Rosenberger's claim did not accrue prior to 2013. Accordingly, the trial court erred in holding that Rosenberger's breach of fiduciary duty claim was barred by limitations. We therefore sustain Rosenberger's second issue.[8]

### C. Remaining Issues and Disposition

Having sustained Rosenberger's first two issues, we turn to the remainder of his thirteen issues and the proper disposition in this appeal. In his fourth, sixth, and eighth issues, which he argues together, Rosenberger asserts both that the evidence conclusively established he timely paid his assessments and the evidence was legally insufficient to support the jury's findings that he failed to pay his assessments and as to the amount of assessments owed. *See generally City of*

---

[8] We take no position in this appeal regarding the ultimate merits of Rosenberger's breach of fiduciary duty claim or whether the 2012 water penetration damages might be recoverable or used as an offset under that or any other cause of action.

*Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005) (legal sufficiency standards of review). These issues potentially provide Rosenberger with greater relief than his first two issues.[9] It was undisputed and established at trial that as a Walden Pond unit owner, Rosenberger was required to pay monthly assessments but did not directly pay assessments to the Association. It was hotly contested throughout trial whether Rosenberger was authorized or permitted to offset the assessments by amounts he spent on making repairs and renovations to the building containing his condominium unit. In support of his argument that he timely and fully paid the assessments through these offsets, Rosenberger relies on his own testimony; however, as sole judge of witness credibility, the jury was free to discount any or all of Rosenberger's testimony. *See Keller*, 168 S.W.3d at 819; *Petrol. Workers Union of the Republic of Mex. v. Gomez*, 503 S.W.3d 9, 28 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

In regard to the Association's evidence, Rosenberger argues summarily that the Association's records were untrustworthy because they had not been audited or inspected in years, but he cites no evidence in support of this assertion, and there was testimony the current property management company for Walden Pond had audited the records. Rosenberger further contends that the Association's purported custodian of records did not have sufficient personal knowledge to support admission of plaintiff's exhibit 4 showing assessments Rosenberger allegedly owed from July 2012 through May 2021. Rosenberger only cites Texas Rule of Evidence 803(6)(E) in support of this proposition, which does not directly support the argument. Rosenberger does not discuss the other testimonial and documentary

---

[9] In his sixth and eighth issues, Rosenberger also challenged the factual sufficiency of the evidence, but such arguments would not provide greater relief than the first two issues we have sustained and thus need not be addressed in this opinion.

22

evidence showing that he owed assessments of certain amounts and had not paid them. In short, there was legally sufficient evidence that Rosenberger had not paid assessments and the Association thereby suffered damages. We therefore overrule Rosenberger's fourth, sixth, and eighth issues.

In his tenth issue, Rosenberger asserts that he established as a matter of law that he was excused from paying his monthly assessments. This issue also potentially provides greater relief; however, as the Association asserts, Rosenberger has failed to support this issue with cogent argument or relevant citation to authority or the record, and it is therefore inadequately briefed and overruled. *See* Tex. R. App. P. 38.1(i); *Nguyen v. Pham*, 640 S.W.3d 266, 275 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

Because under the first issue we hold that the trial court erred in granting partial summary judgment on the validity of the OOTR, we reverse and remand the portions of the trial court's judgment (1) incorporating the partial summary judgment; (2) ordering Rosenberger to pay any amounts, including as damages, attorney's fees, court costs, or otherwise; and (3) ordering a foreclosure sale. Accordingly, we need not reach Rosenberger's fifth, seventh, ninth, and eleventh through thirteenth issues, which seek the same relief. Because under the second issue, we hold that the trial court erred in concluding that Rosenberger's breach of fiduciary duty claim was barred by limitations, we reverse and remand the judgment to the extent that it denied recovery on this claim and we need not address Rosenberger's third issue, which seeks the same relief. We affirm the remainder of the judgment, including the portion denying recovery on Rosenberger's claims for breaches of the Association's governing documents as these were not challenged in this appeal.

## II. Appeal in the Lawsuit against LeMaster

In his appeal of the summary judgment favoring LeMaster, Rosenberger raises three issues, alleging (1) Rosenberger's evidence was sufficient to defeat LeMaster's no-evidence motion for summary judgment; (2) the trial court erred in denying Rosenberger's motion to reconsider the summary judgment; and (3) in the interests of justice, a motion for summary judgment seeking dismissal of valid claims should be denied rather than decided on curable procedural or evidentiary issues. Rosenberger did not separately brief his third issue. Because all three issues concern similar contentions as to the merits of Rosenberger's claims, we will consider them together.

To defeat a no-evidence motion for summary judgment, the responding party must present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When reviewing a trial court's grant of such a motion, we consider the evidence presented in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id*. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). We review a no-evidence summary judgment de novo. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex. 2004). A no-evidence summary judgment is improperly granted if the respondent presents more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.

1997).

## A. The Claims

As discussed above, Rosenberger asserted he obtained information from LeMaster in July 2016 regarding whether the Association had obtained insurance for the building containing Rosenberger's condominium. In a letter dated July 29, 2016, LeMaster informed Rosenberger that he had been working with a Walden Pond representative since March 2016 to secure insurance and was finally able to do so in May 2016. Although some of the buildings had to be placed under different policies owing to varied states of disrepair, Rosenberger's building was insured through a Scottsdale Insurance Company general liability policy and a Texas Windstorm Association wind and hail policy. According to LeMaster, the Scottsdale policy had a $5000 deductible and the Texas Windstorm policy had a 2 percent deductible. LeMaster additionally informed Rosenberger in the letter that

> [t]he inspector came out from Texas Windstorm and made a report on all the building [sic]. Your building had the best review of all since you have new siding and new roof. There was only two request [sic] on your building. One they want the red door repaired or replaced and a photo showing the work has been done. Two they will need a WPI-8 report from an engineer approved by the Texas Windstorm that will fill out a report and send to Texas Windstorm giving you a clean bill stating all work was done to the standards set up by the Texas Windstorm. Please let me know when that has been completed so I can report back to Texas Windstorm. Those reports are kept on fill [sic] in Austin.

The letter additionally indicates that to see the actual policies, Rosenberger would need to contact the person responsible for a particular post office box. Rosenberger represented in his declaration that LeMaster made similar representations as he did in the letter when he delivered the letter in person to Rosenberger.

As also stated above, Rosenberger alleged that in reliance on LeMaster's

representations, he neither pressured the Association to provide coverage for the condominium building nor sought to obtain individual coverage. In his original declaration, Rosenberger contended generally that in August 2017 Hurricane Harvey caused damage to his condominium. In an amended declaration that Rosenberger offered along with his motion for reconsideration, Rosenberger represented that Hurricane Harvey did not cause flood damage to his condominium; instead, water penetrated into the unit through the roof, which, immediately after the storm, was discovered to have approximately 300 square feet of missing and damaged roofing.[10]

Rosenberger states that he submitted claims to LeMaster for damage to his condominium, but Rosenberger did not offer these claims as summary judgment proof in this case. In a subsequent telephone call, LeMaster reportedly informed Rosenberger that his condominium was not covered for the claimed losses. In a letter dated September 12, 2017, LeMaster specifically told Rosenberger:

> This is to notify you that there is no Wind, Hail, Named Storm coverage on building 400. The WPI-8 was submitted to the Texas Windstorm and the building did not meet the structure requirements and the WPI-8 was declined thru the State of Texas Windstorm Association.
>
> Until your building is approved by the Texas Windstorm Association no Windstorm coverage can be written.

Rosenberger asserts that after July 30, 2016 (the date LeMaster hand delivered the first letter) and before September 2, 2017 (the date of the second phone call), LeMaster never informed him that the prior representations about coverage were either false when made, misleadingly incomplete, or changed by circumstances so

---

[10] As Rosenberger points out, repairs to the exterior of the building were the responsibility of the Association, and he does not claim damages against LeMaster for repairs to the roof of the building.

that they were no longer true.

In his petition, Rosenberger stated claims for negligent misrepresentation and fraud. The elements of a negligent misrepresentation claim are: (1) the defendant made a representation in the course of his business or in a transaction in which he has a pecuniary interest; (2) the representation conveyed "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653–54 (Tex. 2018). The elements of fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding); *Parsons v. Trichter & LeGrand, P.C.*, No. 14-21-00284-CV, 2022 WL 17099869, at *5 (Tex. App.—Houston [14th Dist.] Nov. 22, 2022, no pet.) (mem. op.).

Rosenberger also asserted LeMaster had a duty to disclose information to him and either negligently or fraudulently failed to do so. The failure to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak and the party deliberately remains silent. *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 678 (Tex. 2009) (orig. proceeding) (per curiam). There is generally no duty to disclose without evidence of a confidential or fiduciary relationship. *In re Marriage of Moncur*, 640 S.W.3d 309, 317–18 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Bombardier*

*Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019)). However, a duty to disclose may also arise in certain contexts when the defendant (1) discovered new information that made his earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth. *Bombardier Aerospace*, 572 S.W.3d at 220; *Moncur*, 640 S.W.3d at 318. Whether a duty to speak exists is a question of law. *In re Int'l Profit Assocs.*, 274 S.W.3d at 678.

### B. Analysis

Among his summary judgment arguments, LeMaster asserted that Rosenberger could produce no evidence that LeMaster made a false representation or owed any duty to Rosenberger or that Rosenberger incurred damages proximately caused by any action or omission of LeMaster. We agree with LeMaster that Rosenberger failed to produce more than a scintilla of evidence on these elements of his claims, either in his original response to the motion for summary judgment or in his motion to reconsider.

**No evidence a false representation was made intentionally or negligently.** Rosenberger's stated claims for fraud and negligent misrepresentation require proof that LeMaster conveyed false information to Rosenberger. *See Orca Assets*, 546 S.W.3d at 653–54; *In re FirstMerit*, 52 S.W.3d at 758. As evidence, Rosenberger points to the statements LeMaster made in July 2016—that policies for LeMaster's building had been obtained—and in September 2017—that the building was not insured for damage caused by Hurricane Harvey.

LeMaster told Rosenberger in July 2016 that he had obtained policies for Rosenberger's building but the windstorm policy required both repair work to the building and an engineer's report. Rosenberger has provided no evidence that this

statement was untrue, that in fact LeMaster had not obtained a policy for Rosenberger's building or that the repairs or report were not required. The only evidence Rosenberger provided was his communication with LeMaster and his own declaration, and nothing in that evidence refutes LeMaster's July 2016 statements. The fact that there was no windstorm coverage in August 2017—over a year later—is no evidence that LeMaster's 2016 statements were untrue. Indeed, informing Rosenberger that the insurance association required repair work and an engineer's report clearly implied there would be no coverage if those requirements were not met.

Rosenberger has likewise not produced any evidence that LeMaster's September 2017 statement that the building was not insured for Hurricane Harvey damage was false. The fact a policy had been obtained at one point is no evidence the building was insured over a year later. In sum, Rosenberger offered no evidence of a false statement by LeMaster. *Cf. Nationwide Coin & Bullion Rsrv., Inc. v. Thomas*, 625 S.W.3d 498, 508 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (holding plaintiff offered no evidence defendant misrepresented value of coin at time of sale when she only offered a value from an appraisal conducted over a year after the sale).

**No evidence of a duty to disclose the lack of coverage.** As mentioned, Rosenberger also stated claims alleging a failure to disclose information. In this context, Rosenberger suggests that having informed him that policies had been obtained, LeMaster had a duty to notify him whenever the building became uninsured, citing *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (explaining that a duty to disclose may arise "when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the

earlier representation misleading or untrue").

However, no such duty arose under the facts presented. LeMaster informed Rosenberger in July 2016 that he had obtained insurance policies for the building in May 2016 but that the windstorm policy required a repair to the building and an engineer's report. As discussed above, Rosenberger produced no evidence that these statements were untrue or ever became untrue. Rosenberger cites no law, and we are aware of none, that would require an insurance agent who answers a third party's question about insurance coverage on one date to have a continuing, perpetual duty to inform the third party if the coverage status in question ever changes. The line of cases that includes *Solutioneers* stems in large part from Restatement (Second) of Torts section 551. *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 561 (Tex. 2019) (explaining connection to section 551 and noting the Texas Supreme Court has never expressly adopted that section for use in Texas); *see also Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).[11] Section 551 recognizes a general duty of a party to a business transaction to disclose certain information in specific circumstances. Restatement (Second) of Torts § 551(1); *CLC Roofing, Inc. v. Helzer*, 594 S.W.3d 414, 420 (Tex. App.—Fort Worth 2019, no pet.). There is no evidence that LeMaster was engaged in any business transaction with Rosenberger; LeMaster's relationship was with the Association, which in turn owed a duty to Rosenberger to ensure the exterior of his building. Under these facts, LeMaster had no duty to inform Rosenberger of any

---

[11] For the proposition that a party may have a duty to disclose new information that renders an earlier representation misleading or untrue, *Solutioneers* cites *Four Brothers Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670–71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); which in turn cites *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); which in turn cites *Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 236 n.6 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.); which in turn cites Restatement section 551. The case cited in *Mercedes-Benz* also relates back to *Susanoil* and then section 551.

changes in the insurance coverage status of the building. *See In re Int'l Profit Assocs.*, 274 S.W.3d at 678.

**No evidence of resulting covered damages.** All of Rosenberger's claims also required proof of causation and damages, and Rosenberger has failed to present more than a scintilla of evidence that he suffered any injury as a result of LeMaster's conduct. Although, in his declaration, Rosenberger stated that Hurricane Harvey damaged his condominium, he provided no explanation regarding the type of damage sustained, whether it would have been covered under the policies obtained by LeMaster, or whether it would have been covered by any policy Rosenberger could have obtained on his own. He did not even provide copies of any relevant policies so that the court could see what would have been covered. Although it could be surmised from Rosenberger's statements in his two declarations that during Hurricane Harvey, water penetrated his condominium through the roof, Rosenberger said nothing about what damage that water may have caused. As the nonmovant, Rosenberger was, of course, entitled to every reasonable inference from the evidence, *see Cantey Hanger*, 467 S.W.3d at 481, but Rosenberger presented no evidence from which we can infer that any damage caused by penetrating water from Hurricane Harvey was covered by any relevant policies. *See, e.g., Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012) (holding property owner's bare conclusions provided no evidence of damage caused by defendant's conduct); *Tellez v. Allstate Tex. Lloyds*, No. 14-06-00305-CV, 2007 WL 3146731, at *1–2 (Tex. App.—Houston [14th Dist.] Oct. 30, 2007, pet. denied) (mem. op.) (holding nonmovant presented no evidence of causation or damages where she failed to present evidence establishing alleged damage was covered by insurance policy); *Thomas v. Allstate Ins. Co.*, No. 14-05-00293-CV, 2006 WL 2290840, at *5 (Tex. App.—Houston [14th Dist.] Aug. 10,

2006, no pet.) (mem. op.) (holding conclusory statements in nonmovant's affidavit were no evidence of damages caused by defendant's alleged misrepresentations about the terms and provisions of an insurance policy).

The trial court did not err in granting summary judgment favoring LeMaster. Accordingly, we overrule Rosenberger's three issues in this appeal and affirm the trial court's judgment.[12]

## *Conclusion*

In the appeal from the final judgment favoring the Association, we reverse and remand the portions of the judgment incorporating the partial summary judgment; ordering Rosenberger to pay any amounts, including as damages, attorney's fees, court costs, or otherwise; ordering a foreclosure sale; and denying recovery on Rosenberger's breach of fiduciary duty claim. We affirm the remainder of the judgment.

We affirm the trial court's judgment in the appeal involving LeMaster.


/s/     Frances Bourliot
Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer. (Jewell, J., concurring and dissenting).

---

[12] In his petition, Rosenberger also asserted that LeMaster and the Association "conspired or otherwise acted in concert to mislead Rosenberger into relying on insurance coverage which apparently did not exist" and asserted they were "jointly and severally liable for Rosenberger's damages." Rosenberger explained in his response to the motion for summary judgment and at the hearing on the motion that this allegation was aimed at making the Association responsible for LeMaster's representations and was not aimed at making LeMaster responsible for any conduct by the Association. This allegation, therefore, did not add any claims against LeMaster not already discussed in this opinion.